IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| DAVID SCROGGINS, § <br> (BOP No. 76522-080), § <br>     Plaintiff, § <br> V. § <br> § <br> UNITED STATES OF AMERICA, § <br> § <br>     Defendant. § | CIVIL ACTION No. 4:19-cv-163-O |

## MEMORANDUM OPINION AND ORDER

This case is before the Court for review of pro-se inmate/plaintiff David Scroggins's ("Scroggins") claims under the Federal Tort Claims Act (FTCA) against the United States of America (USA). Now pending is the motion for summary judgment of defendant USA, along with a brief in support and an appendix. USA Mot. for Summ J, ECF No. 14; USA Brief, ECF No. 15; USA App., ECF No. 16. Plaintiff did not file any response nor did he seek an extension to file any response. After review and consideration of the summary judgment motion, the pleadings, the record, and the applicable law, the Court concludes that the USA is entitled to summary judgment on all claims asserted by Scroggins.

**I.    BACKGROUND and PLAINTIFF'S COMPLAINT**

Plaintiff Scroggins is an inmate at the Bureau of Prisons' ("BOP") FMC-Fort Worth facility.[1] Scroggins acknowledges that when he arrived at FMC-Fort Worth, he already had a chronic elbow infection from a pre-existing injury, was under the care of an infectious disease and orthopedic specialist, and was then prescribed and taking several medications. Complaint 3, ECF No. 1. Scroggins writes that soon after his placement in FMC-Fort Worth in December 2017, after he was

---

[1]See www.bop.gov (inmate David Scroggins, Register Number 29351-009) last visited April 13, 2020.

taken off some of the medications, he ended up having to be admitted to John Peter Smith Hospital where he was diagnosed as having a lung infection, pneumonia, and strep. *Id.* at 4. Scroggins writes that though he was placed back on several of the medications, once he was returned to FMC-Fort Worth, the medications were again stopped. *Id*. at 5. Scroggins reports that the chronic infections in his elbow became worse, and he had to seek efforts to obtain antibiotics for this chronic elbow infection. *Id.* at 6.

Scroggins writes that he continued to have an infection in the right elbow area, and eventually saw an infectious diseases specialist who recommended that the dressing on his elbow be changed daily rather than three times a week, and that he be given the antibiotic Bactrim for 6 months. *Id*. at 6-7. Scroggins complains that the medical providers at FMC-Fort Worth again delayed in prescribing to him the antibiotic prescription. *Id*. at 7. He contends that it was only after he also developed a right ear infection that his primary care physician Dr. Mercado then supported giving him a prescription for Bactrim. *Id.* at 7-8.

Scroggins separately complains that in June 2018, while FMC Fort Worth had implemented a quarantine of all inmate property (including all footwear), and while he was as a result wearing shower shoes, he slipped and fell while waiting in the pill line, landing on and hurting his head, shoulder, the previously damaged elbow, and the right side of his body. *Id.* at 8. Scroggins also claims that the floor in that area had recently been waxed and also that the floor had standing water. *Id.* Scroggins writes that he was in severe pain and ended up being transported to JPS Hospital. *Id*. at 9. Once there, Scroggins writes that he was diagnosed with a broken shoulder and bruised ribs, was given a pain medication, and was told to follow with an orthopedic specialist. *Id.* at 9-10. He contends that in a subsequent review back at FMC-Fort Worth sick call, a mid-level practitioner thought he might has also broken his wrist. *Id.* at 10. Scroggins writes that he was never seen by the orthopedic

clinic, such that at the time he filed this suit, his fractured shoulder had not been properly set or addressed. *Id.* at 10-11.

Scroggins complains and alleges that the BOP medical staff committed medical negligence by not providing the proper medication regiment to treat his chronic infection, such that he is in great pain, and is at risk of losing his right arm. *Id.* at 11. He also alleges that the shoulder injury resulting from the slip and fall incident has also not been examined, and he contends that such delay could result in a life-long disability for him. *Id*. at 11-12. He also raises a separate claim for the alleged failure of FMC-Fort Worth to maintain a safe environment as a premises liability claim. *Id.* at 11.

## II. SUMMARY JUDGMENT EVIDENCE

As noted, the USA filed an appendix in support of the motion for summary judgment that includes a total of 150 pages of records. ECF No. 16-1 and 16-2. In particular, the appendix includes the January 15, 2020 Declaration of BOP Medical Records Technician Barry Heller with 122 pages of copies of Scroggins's medical records (ECF No.16-2, 1-123), and copies of portions of Scroggins's November 4, 2019 redacted deposition transcript (ECF No. 16-2, 124-150).[2] Scroggins declared his complaint in this matter to be "true and correct" and made "under penalty of perjury." Complaint 14, ECF No. 1. Under controlling circuit authority, this Court must consider the complaint as competent summary-judgment evidence in resolving the summary judgment motion. *See Barnes v. Johnson*, 204 F. App'x 377, 378 (5th Cir. 2006) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.

---

[2]The United States acknowledges that it inadvertently scheduled and took the deposition of inmate Scroggins without first seeking leave of Court as required under Federal Rule of Civil Procedure 30(a)(2)(B). USA Brief 7, n.1, ECF No. 15. The Court finds that since Plaintiff Scroggins did not object, and there was no apparent disruption of his facility for the taking of the deposition, the deposition excerpts will still be admissible summary judgment evidence. *See, e.g. Kendrick v. Schnorbus*, 655 F.2d 727, 728-29 (6th Cir. 1981) ("The plaintiff himself started the lawsuit and the defendants surely had the right to depose him in conjunction therewith. Absent any showing of any real injury because of the failure to obtain leave, we do not believe the trial judge abused his discretion in failing to suppress.")

1994) (a plaintiff's verified complaint may serve as competent summary judgment evidence); *see also Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) (citing *Huckabay v. Moore*, 142 F.3d 233, 240 n. 6 (5th Cir. 1998); *see generally Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1989) (noting that the statutory exception in 28 U.S.C. § 1746 permits unsworn declarations to substitute for an affidavit if made "under penalty of perjury" and verified as "true and correct").

The USA has presented a lengthy history related to what Scroggins' medical records in the USA Appendix reveal regarding the medical care provided to him during the relevant time periods made the basis of the complaint. USA Brief 6–13, ECF No. 15. As noted, Scroggins has not filed any response, and thus has not come forward with any evidence to contest defendant USA's summary judgment motion. As explained in the analysis section below, however, because all of Scroggins's medical care claims for relief under the FTCA can be resolved on a legal ground, the Court does not include a restatement of a factual chronology inclusive of that listed by the United States.

### III. SUMMARY JUDGMENT STANDARD

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001)(citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact cannot be genuinely in dispute, a defendant movant must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions, etc.), or (b) show either that (1) the plaintiff cannot produce admissible evidence to support that particular fact, or (2) if the plaintiff has cited any materials in response, show that those materials do not establish the

presence of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1). Although the Court is required to consider only the cited materials, it may consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. . . ." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (other citation omitted)). In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted)(internal quotation marks omitted). "After the non-movant [here, Jenkins] has been given the opportunity to raise a genuine factual [dispute], if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**IV.    ANALYSIS**

    **A**.    **Expert Testimony Required to Support Medical Negligence Claims**

Scroggins claims negligence under the FTCA on the part of BOP medical staff at FMC-Fort Worth. Complaint 3-12, ECF No. 1. He alleges that the failure to provide proper medical treatment for chronic infections amounted to a breach of the duty of care that proximately caused him to sustain damages compensable under the FTCA, 28 U.S.C. § 2674. *Id.* at 12-13.

The FTCA authorizes civil actions for damages against the United States for personal injury caused by the negligence of government employees when private individuals would be liable under

the substantive law of the state in which the negligent acts occurred. *See* 28 U.S.C.A. § 1346(b)(1) (West 2019); 28 U.S.C.A. § 2674 (West 2019); *see also Quijano v. United States*, 325 F.3d 654, 567 (5th Cir. 2003). The FTCA essentially borrows from state law in that it allows the United States to be held liable for allegedly tortious conduct "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Accordingly, to the extent Scroggins complains of alleged medical negligence occurring at FMC-Fort Worth in Texas, Texas law applies to Scroggins' FTCA claims. *See Ayers v. United States*, 750 F.2d 449, 452 n.1 (5th Cir. 1985) ("Under the [FTCA], liability for medical malpractice is controlled by state law.").

In Texas, "health care liability claims are subject to strict pleading and proof requirements." *N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 561 (5th Cir. 2008) (citing Tex. Civ. Prac. & Rem. Code §§ 74.001–507). Particular to the medical negligence context, under Texas law the plaintiff bears the burden of proving four elements: (1) a duty by the physician or hospital to act according to an applicable standard of care; (2) a breach of that standard of care; (3) injury; and (4) a causal connection between the breach of care and the injury. *See Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008) (citing *Quijano*, 325 F.3d at 564-567); *see also Bryan v. Sherick*, 279 S.W. 3d 731, 732-33 (Tex. App.--Amarillo 2007, no pet); and *Denton Reg. Med. Ctr. V. LaCroix*, 947 S.W. 2d 941, 950 (Tex. App.-Fort Worth 1997, no writ). As a threshold issue, a plaintiff must establish the standard of care before the fact finder may consider whether the defendant breached the standard of care or if such a breach constituted negligence. *Hannah*, 523 F.3d at 601; *Denton Reg. Med. Ctr.*, 947 S.W.2d at 950. A plaintiff must therefore prove how a reasonably careful and prudent physician would have acted under the same or similar circumstances. *See Hood v. Phillips*, 554 S.W. 2d 160, 165-66 (Tex. 1977). Texas law imposes a presumption that the health-care provider has discharged his duty of care. *Thomas v. Beckering*, 391 S.W. 2d 771, 775 (Tex. Civ. App.-

-Tyler 1965, writ ref'd n.r.e.); *Shevack v. United States*, 528 F. Supp. 427, 431 (N.D. Tex. 1981). A physician is not a guarantor of a cure, and negligence is not imputed from an unsatisfactory outcome. *See Hunter v. Robison*, 488 S.W. 2d 555, 560 (Tex. Civ. App.--Dallas 1978, writ ref'd n.r.e.); *Beckering*, 391 S.W. 2d at 775. Defeating the presumption of proper care requires affirmative proof of negligence and proximate cause. *Williford v. Banowsky*, 563 S.W. 2d 702, 705 (Tex. Civ. App.--Eastland 1978, writ ref'd n.r.e.).

Expert testimony is required when the alleged negligence is "of such a nature as not to be within the experience of the layman." *FFE Transp. Serv., Inc. V. Fulgham*, 154 S.W.3d 84, 90 (Tex. 2004) (quoting *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982)) (other citations omitted). Particular to the medical context, expert testimony is required to establish the applicable standard of care "unless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman . . .." *Hannah*, 523 F.3d at 601 (quoting *Hood*, 554 S.W. 2d at 165-66). Plaintiff must similarly offer expert testimony on the issue of causation. *See Jelinek v. Casas*, 328 S.W. 3d 526, 533 (Tex. 2010) ("[T]he plaintiff must establish two causal nexuses in order to be entitled to recovery: (a) a causal nexus between the defendant's conduct and the event sued upon; and (b) a causal nexus between the event sued upon and the plaintiff's injuries"); *see also Arlington Memorial Hosp. Found., Inc., v. Baird*, 991 S.W. 2d 918, 922 (Tex. App. Fort Worth 1999, pet. denied) (citation omitted). A plaintiff must establish causation beyond the point of conjecture, and proof of mere possibilities does not support submission of the issue to a fact finder. *Jelinek*, 328 S.W. 3d at 537. In this regard, "mere speculation or conjecture is not sufficient to establish [a] causal connection between a defendant's conduct and the plaintiff's injuries." *Martin v. Durden*, 965 S.W.2d 562, 567 (Tex. App.-Houston [14th Dist.] 1997 writ denied) (citation omitted). In sum, an expert must explain, to a reasonable degree of medical probability, how and why the alleged negligence caused the injury based

on the facts presented. *Jelinek*, 328 S.W. 3d at 539-40.

In short, subject to the narrow exception for matters of common knowledge, a plaintiff must produce expert testimony to meet his burden of proof on a malpractice claim under Texas law. *See Hannah*, 523 F.3d at 601; *see also Prindle v. United States*, No. 4:10-CV-54-A, 2011 WL 1869795, at **1–2 (N.D. Tex. May 13, 2011) (holding that expert testimony is required to establish the standard of care with respect to an FTCA claim that medical personnel were negligent in failing to diagnose and treat carcinoma).

Courts have routinely found that the standard of care and treatment for infectious conditions are outside the province of lay testimony. *See Hurston v. United States*, Civil Action No. 4:19-cv-00094-P, 2019 WL 7370852, at *3 (N.D. Tex. Dec. 31, 2019) ("Care for leg wounds and staph infections are not matters of common knowledge or within the general experience of a layman"); *see also Kaster v. Woodson*, 123 S.W.2d 981, 983 (Tex. Civ. App. – Austin 1939, writ ref'd); ("What is an infection and from whence did it come are matters determinable only by medical experts."). The Fifth Circuit has specifically held that "the mode of treatment for MRSA is not a matter of common knowledge or within the general experience of a layman," and thus expert testimony on these topics is required to establish the applicable standard of care and show how the treatment the plaintiff received allegedly breached that standard. *Hannah*, 523 F.3d at 601-02 (noting that the Plaintiff's contention that any layperson could discern the standard of care was not met, where over the course of year-long treatment the MRSA infection spread, was belied by plaintiff's descriptions of his treatment to include antibiotics and surgeries). Similarly, here, Scroggins had a complicated course of treatment for his chronic elbow infection dating back many years pre-existing his imprisonment, and continuing from the time he arrived into FMC-Fort Worth custody in December 2017.

### B. Scroggins has not Provided Expert Testimony

In this case, Scroggins has not shown—and cannot show—that the medical standard of care, and the issues of breach and causation regarding the treatment of the medical conditions detailed in his pleadings, are matters of common knowledge or within the general experience of a layperson, so as to excuse the requirement to provide evidence in the form of expert testimony.

The Court's Scheduling Order set October 28, 2019 as the deadline for Scroggins to designate an expert and provide that expert's report. Scheduling Order, ECF No. 12. As of the date of this order, Scroggins has neither designated an expert, nor acknowledged his failure to do so by requesting leave to designate experts or providing an explanation to the Court. In fact, after receiving the United States's Motion for Summary Judgment, which addresses his failure to designate experts, Scroggins still failed to come forward with any response. Because the proper treatment for infectious conditions are not matters of common knowledge or within the general experience of a layman, Scroggins was required to present expert testimony to establish the applicable standard of care and to show how the medical care he received breached that standard. *See Hannah*, 523 F.3d at 523. Scroggins medical malpractice claim fails as a matter of law without the support of expert testimony. *Hood*, 554 S.W. 2d at 165-66. Therefore, summary judgment must be granted in favor of the United States on Scroggins's medical negligence claims.

### C. Scroggins Fails to Support A Separate Premises Liability Claim

In addition to the medical treatment provided, Scroggins also alleges that prison conditions caused him to fall and injure his wrist and shoulder. Complaint 8, ECF No. 1. To the extent that Scroggins' claim is that the wrist and shoulder injuries were caused by some allegedly unsafe or hazardous condition at the prison, it is in the nature of a premises liability claim under Texas law. "This requires the plaintiff show a condition on the premise posing unreasonable risk of harm, that

the defendant had actual or constructive knowledge of the danger, that defendant failed to warn the plaintiff and make the condition safe, and that the failure to warn and make safe proximately caused the plaintiff's injuries." *Antunez v. United States*, No. 05-CV-555, 2006 WL 2933885, at *2 (S.D. Tex. Oct. 12, 2006) (analyzing a prisoner's slip-and-fall claim under the FTCA) (citing *CMH Homes, Inc. V. Daenen*, 15 S.W. 3d 97, 99 (Tex. 2000); *see also Benedetti v. Wal-Mart Stores Tex.,Inc.*, 788 F. App'x 945, No. 18-50454, 2019 U.S. App. LEXIS 29916, at *3 (5th Cir. Oct. 3, 2019) (if no evidence of a hazard, a constructive notice theory requires analyzing the combination of proximity, conspicuity, and longevity such that there must be "some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition.") (citing *Wal-Mart Stores, Inc. v. Reece*, 81 S.W. 3d 812, 816 (Tex. 2002)).

Scroggins has not alleged an unsafe or hazardous condition on the premises that caused his fall, much less, that the defendant had actual or constructive knowledge of the danger, that defendant failed to warn the plaintiff and make the condition safe, and that the failure to warn and make safe proximately caused the plaintiff's injuries. Scroggins offers several possible causes for his fall – that he was wearing "sliders" (flip flops), that he spotted standing water that had not been cleaned up, and that the floor had recently been waxed. Complaint 8, ECF No. 1. But there is no evidence that any of these conditions was unreasonably hazardous, or that any of these conditions actually caused Scroggins's fall.

Notably, as he testified in his deposition, Scroggins does not remember when he fell, nor does he know what caused him to fall. Scroggins Deposition, USA App. 128-130, 133-34, 135-36, 137-40, ECF No. 16-2. Scroggins instead speculates that he must have slipped on something. *Id*. at 135. Scroggins believes that the shoes may have contributed to his fall, but he does not recall them being slippery prior to the fall. Likewise, he saw a sprinkling of water on the ground, but only after he fell.

-10-

*Id*. at 135-136. And Scroggins acknowledged that typically, when water is observed in this area, it is cleaned up by the orderlies or the inmates. *Id.* at 149-50. Scroggins also opines that the floor may have been slippery because the floor had been waxed within a week prior to his fall. *Id*. at 142. Scroggins testified, however, that he had not previously had any issues with slipping on the wax floor, and he does not know whether the waxed floor contributed to his fall. *Id*. Based upon the review of Scroggins's own testimony, he has not shown an unreasonably hazardous condition, and he has failed to come forward with evidence to establish the other necessary elements of a premises liability claim.

Thus, the Court also finds that the United States is entitled to summary judgment on Scroggins's alternative FTCA premises liability based claim.

## ORDER

For the reasons discussed herein, it is therefore **ORDERED** that the USA's motion for summary judgment (ECF No. 14) is **GRANTED,** such that all David Scroggins's claims against the United States of America are **DISMISSED WITH PREJUDICE.**

**SO ORDERED** on this **13th day** of **April, 2020**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**